UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81323-CIV-MARRA/MATTHEWMAN

FRAN FINCH,

      Plaintiff,

vs.

MORGAN STANLEY & CO. LLC;
MORGAN STANLEY SMITH BARNEY,
LLC; and MORGAN STANLEY SMITH
BARNEY FA NOTES HOLDINGS LLC,

      Defendants.

_____/

## ORDER AND OPINION ON PARTIAL MOTION TO DISMISS

    **THIS CAUSE** is before the Court upon Defendants' Partial Motion to Dismiss [DE 16].  The motion is fully briefed and ripe for review.  The Court has carefully considered all relevant filings and is otherwise fully advised in the premises.

## Introduction

    Plaintiff Fran Finch ("Finch") is a resident of Delray Beach Florida.  Finch has been a successful financial advisor since 1980.  Amended Complaint ("Compl.") [DE 6], ¶ 12.  In 2008, after 28 years with Merrill Lynch, she joined Morgan Stanley's Ridgeland, Mississippi branch office.  Compl. ¶ 14.  She was employed by Defendants from 2008 to October 31, 2014.  Compl. ¶ 10.

    Finch is a 64 year-old single mother of two daughters, ages 16 and 12.  Compl. ¶ 15.  In 2012, her disabled child was sexually assaulted at school in Mississippi.  Compl. ¶ 16-17.  In the fall of 2012, Finch informed her branch manager, Fred Brister,

of this traumatic event.  Compl. ¶ 18.  While not stated directly, it appears Finch left work to deal with "immediate family issues requiring her urgent attention."  Compl. ¶ 23.  She remained on leave for at least 16 months (from July 2013, when "Morgan Stanley unilaterally placed her on leave," through her alleged constructive discharge in October 2014), although the Complaint suggests that she never returned to work after leaving in the fall of 2012.  Compl. ¶¶ 41, 83

In her Amended Complaint (filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)), Finch asserts 14 causes of action against Defendants related to her employment at Morgan Stanley.  Regarding her claims of retaliation, the following alleged scenario is relevant:  Mr. Wyatt, a colleague, was the subject of "countless customer arbitrations and an investigation by the Mississippi Secretary of State (and possibly FINRA)."  Compl. ¶ 103.  Finch "noticed that Mr. Wyatt was suddenly exhibiting unexplained erratic behavior, brought on, upon information and belief, by substance abuse.  Ms. Finch instructed her assistant, Debbie Koonz to report it to HR."  Compl. ¶ 105.  During the course of discovery in an arbitration against Morgan Stanley ("the Lutz Arbitration"), a July 6, 2010 email Finch sent to Mr. Brister (the branch manager) was produced.  In part of the email, Finch expressed concern that Mr. Wyatt was "incapacitated."  She also reminded Mr. Brister that she had previously notified Morgan Stanley management of her concerns regarding Mr. Wyatt months earlier.  Compl. ¶ 85.

Finch was deemed by claimants in the Lutz Arbitration to be a crucial witness for their case.  Compl. ¶ 87.   Finch was subpoenaed to testify by deposition.  Compl. ¶¶ 92, 93.  Finch alleges that when Morgan Stanley realized that it would not be able to preclude or discredit her testimony, it decided to retaliate against her by improperly demanding repayment of a loan which had been made to her as a condition of her employment.  Compl. ¶ 88.  According to Finch, Morgan Stanley wrongfully declared the Promissory Note immediately due and payable, because, by its terms, it was only due if she terminated voluntarily or was terminated by Morgan Stanley for any reason whatsoever.  Compl. ¶ 96.  "Knowing full well that Ms. Finch had earned no income from Defendants since 2012, Defendants sought to further intimidate her by demanding repayment of" the loan.  Finch claims Mr. Wyatt also had a loan and that when he was terminated for performance reasons, Morgan Stanley did not make the same demand of him, proving that Morgan Stanley did not treat similarly situated male employees the same.  Compl. ¶¶ 89, 94-97, 100, 103.

Defendants argue that Finch fails to state a claim upon which relief can be granted, and that dismissal is warranted under Fed. R. Civ. P. 12(b)(6) as to Plaintiff's claims of interference and retaliation under the Family and Medical Leave Act ("FMLA"), her retaliation claims under Title VII, the American with Disabilities Act ("ADA"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and Florida

Statute § 448.102,[1] and her claims for promissory estoppel and unjust enrichment.

## Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quotations and citations omitted).  "A

---

[1] Florida's private-sector Whistleblower Act ("FWA") protects an employee from retaliation under three different scenarios.  The first protected activity is when an employee "[d]isclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102(1). The second protected activity is when an employee "[p]rovided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of law, rule, or regulation by the employer." Fla. Stat. § 448.102(2). The third and final protected activity is when an employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102(3).

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

### Family Medical Leave Act

The FMLA entitles an eligible employee to twelve work weeks of unpaid leave during any twelve-month period if she needs the leave in order "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C.A. § 2611(11).   The FMLA does not define "continuing treatment by a health care provider," but the Department of Labor has issued a regulation defining that phrase, in relevant part, as follows:

(2)  Continuing Treatment by a health care provider.  A serious health condition involving continuing treatment by a health care provider includes any one

or more of the following:

(I)  A period of incapacity (*i.e.*, inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A)  Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(B)  Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

* * * *

29 C.F.R. § 825.114(a)(2)(I); *see Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1337 (11th Cir. 2003).

The FMLA requires employees to provide 30 days advance notice of the leave, when the need to take leave is foreseeable.  29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a).  If the need for leave is not foreseeable, notice must be given "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  In interpreting the notice requirements of the FMLA, the Eleventh Circuit has held that "where an employee's need for FMLA leave is unforeseeable, the

employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to *a potentially FMLA-qualifying reason*." *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005) quoting *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (emphasis in original).  An employee is not required to assert expressly her right to take leave under the FMLA. 29 C.F.R. §§ 825.302(c), 825.303(b).  However, the notice must be "*sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave*."  *Id*. § 825.302(c) (emphasis supplied). Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection.  *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1209 (11th Cir. 2001) (citing 29 C.F.R. § 825.303(b)).

The FMLA creates a private right of action to seek equitable relief and money damages against employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise"  FMLA rights.  29 U.S.C. §§ 2615(a)(1), 2617(a); *see Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003).  Section 2615(a) creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  *Strickland*, 239

F.3d at 1206 (internal citations omitted).  Finch asserts both.

   A.   <u>Interference Claim</u>

   To establish an interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied."  *Id.* at 1207; *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000).  "While suffering from a serious health condition is necessary, it is not sufficient for an employee to earn FMLA leave.  She must also give her employer notice of her need for leave, see § 2612(e), and she can state an interference claim only if she gave proper notice."  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015) citing *Hurley v. Kent of Naples, Inc.,* 746 F.3d 1161, 1167 (11th Cir. 2014).

<u>FMLA's Notice Requirements</u>

   An employee's notice of her need for FMLA leave must satisfy two criteria - timing and content - both of which differ depending on whether the need for leave is foreseeable or unforeseeable.  As to timing, if an employee's need for leave is unforeseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case.  29 C.F.R. § 825.303(a).  As to content, as a general rule, an employee need not explicitly mention the FMLA when giving notice to her employer.  *See Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA.").  But the FMLA and its

regulations do require that the notice convey certain information.  If the need for leave is unforeseeable, an employee need only "provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request."  § 825.303(b).  Because Finch's need for leave was unforeseeable, she was required to give notice only as early as was practicable, § 825.303(a), and her notice had to contain only "sufficient information for [Morgan Stanley] to reasonably determine whether the FMLA may apply to the leave request," *id*. § 825.303(b). *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195-96 (11th Cir. 2015).

In this case, Defendants argue that Finch's FMLA interference claim must fail because she does not allege that she provided sufficient information for Morgan Stanley to reasonably determine whether the FMLA may apply to the leave she took or that Morgan Stanley denied or interfered with any such request.  Morgan Stanley points out that Finch admits in her Complaint that Morgan Stanley encouraged her to take family medical leave.  Compl. ¶¶ 32, 38.

In response, Finch argues that she has alleged that she was constructively discharged while she was out on FMLA leave and that is sufficient to state a claim for interference under the FMLA.  DE 21 at 2.  The Court does not agree.

Even if Finch qualified for unforeseeable family medical leave to care for her sexually assaulted disabled child, the allegations as stated in the Complaint cannot be said to put Morgan Stanley on notice that her absence was due to a potentially

FMLA-qualifying reason.[2]   Additionally, Finch does not allege that she gave her

employer the required notice of the probable duration of the condition requiring the

leave.  29 U.S.C. § 2613(b)(2).  Were FMLA leave to begin in the fall of 2012,[3] such

leave would have expired 12 weeks later, long before her alleged constructive

termination on October 31, 2014.  In fact, Finch does not acknowledge the three

month limitation for FMLA leave, and complains that Defendants violated the FMLA as

if there were no time limitation, even though the instant saga runs from "the fall of

2012," until she was allegedly constructively discharged in October 2014,

approximately a two-year period of time.

　　　Finch neither alleges that she gave Morgan Stanley sufficient information for it

to reasonably determine whether the FMLA applied to the leave she took, nor does

she allege that she provided notice of the probable duration of the condition

requiring the leave.  Accordingly, the Court agrees with Defendants that Finch has

not adequately stated an FMLA interference claim.  In accordance with Fed. R. Civ. P.

---

　　[2]  The FMLA includes a mechanism by which an employer may ascertain
whether an employee's absence qualifies as FMLA leave; specifically, "[a]n employer
may require that a claim that an employee is unable to return to work because of the
continuation, recurrence, or onset of [a] serious health condition ... be supported by
... a certification issued by the [employee's] health care provider."  29 U.S.C. §
2614(c)(3)(A).  The federal regulation interpreting the certification provision of the
Act states that if the certification is inadequate, "[t]he employer shall ... provide the
employee a reasonable opportunity to cure any such deficiency."  29 C.F.R. §
825.305(d).  There is no discussion in the Complaint regarding whether Defendants
requested, or Finch provided, any certification that her absence was for an
FMLA-covered condition.

　　[3]  Compl. ¶ 18.

15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962), Finch will be given an opportunity to amend this claim.

### B.   Retaliation Claim

A retaliation claim is where "an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." *Dykstra v. Florida Foreclosure Attorneys, PLLC*, – F. Supp. 3d –, 2016 WL 1644069, *2 (S.D. Fla. Apr. 26, 2016) citing *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  In order to state a claim of retaliation, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000).  As concluded above in the section on FMLA interference, the Complaint does not adequately allege that Finch ever requested or sought FMLA leave from Morgan Stanley.  In fact, Finch admits that Morgan Stanley repeatedly reminded her of her rights under the FMLA, and inquired as to whether she would like to take protected leave under the statute.  Compl. ¶¶ 32, 38.  Finch, by her own admission, declined it because she wanted to work (or "hotel") near Delray Beach, Florida.  Compl. ¶¶ 34, 38, 39.  As Finch fails to allege that she engaged in protected activity under the FMLA, her claim for retaliation under the statute must be dismissed.  *See Sparks v. Sunshine Mills, Inc.*, 580 F. App'x 759, 766 (11th Cir. 2014) (dismissing FMLA retaliation claim and stating, "[b]ecause Sunshine was unaware

Sparks needed or desired FMLA leave, Sparks has failed to establish Sunshine interfered with his rights under the statute by terminating him before he could take FMLA leave.  For the same reason, Sparks has failed to establish Sunshine retaliated against him for engaging in a protected activity under the statute."); *Martinez v. Mercedes Home Realty, Inc.*, 2005 WL 264788419, *6 (M.D. Fla. October 17, 2005) ("Without requesting leave, Martinez cannot have engaged in statutorily protected conduct or attempted to avail herself of her rights under the FMLA.  Therefore, she has failed to establish the first element of a claim under the FMLA, for either discrimination or retaliation, as it relates to her termination.")  In accordance with Fed. R. Civ. P. 15(a) and *Foman v. Davis*, 371 U.S. 178, 182 (1962), Finch will be given an opportunity to amend this claim.

**Claims for Retaliation Under Other Statutes**

**Title VII[4]**

To establish a prima face case of retaliation under Title VII, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the

---

[4]  "Title VII of the Civil Rights Act of 1964 forbids employment discrimination against 'any individual' based on that individual's 'race, color, religion, sex, or national origin.'  42 U.S.C. § 2000e-2(a).  A separate section of the Act - its anti-retaliation provision - prohibits an employer from 'discriminat[ing] against'  an employee or job applicant because that individual 'opposed any practice'  made unlawful by Title VII or 'made a charge, testified, assisted, or participated in'  a Title VII proceeding or investigation. § 2000e-3(a)."  *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 56 (2006)

protected activity and the adverse employment action.  *See Adams v. City of Montgomery,* 569 F. App'x 769, 772 (11th Cir. 2014); *Standard v. A.B.E.L. Svcs., Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998) (noting that ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims).

Title VII prohibits an employer from discriminating against an employee who has opposed what she believes to be unlawful discrimination.  42 U.S.C.A. § 2000e-3(a).  The employee need not prove the underlying claim of discrimination which led to her protest.  *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir. 1989).  Instead, an employee's opposition to discrimination is protected if she could reasonably form a good faith believe that the discrimination in fact existed.  *Id.*

While Finch alleges throughout her Complaint that Morgan Stanley discriminated against her, that is all she says – that Morgan Stanley discriminated against her.  Having carefully reviewed the entire Complaint, the Court finds the allegations of discrimination insufficient to satisfy the *Twombly* plausibility standard. In responding to the Motion to Dismiss, Finch argues that she

> has alleged that she was constructively discharged after complaining about discrimination.  *See* Amended Complaint ¶ 103.  Plaintiff further alleges that Defendants retaliated against her for objecting to Defendants' unlawful employment practices under Title VII, the ADA, and the ADEA.  *See* Amended Complaint ¶¶ 145, 151, 157.  These allegations are sufficient to state a claim for retaliation under Title VII, the ADA, and the ADEA.

DE 21 at 4.  The Court does not agree.

Culling through the Complaint, the Court notes Finch makes the conclusory allegation that Morgan Stanley unlawfully discriminated against her "based on her association with someone with a disability and/or a perceived disability, age, gender, and her marital/family status."  Compl. ¶ 81.  Finch further alleges that Morgan Stanley retaliated against her because she testified in the Lutz Arbitration.  Compl. ¶ 87-88.  The alleged form of Morgan Stanley's retaliation is Defendants' sudden and allegedly improper demand that Finch repay a loan which had been made to her as a condition of her employment.  Compl. ¶ 88.  Finally, it appears Finch may also be claiming gender discrimination through the allegation that her coworker, Mr. Wyatt, who also had a loan with Morgan Stanley, and who was terminated for reasons related to his performance, was not required to repay his loan.  Compl. ¶¶ 89, 94-97, 100, 103.  Because Finch has not alleged (1) the form of discrimination she believed Morgan Stanley engaged in, (2) how she opposed that discrimination, and (3) that her opposition to that discrimination resulted in an adverse employment action, the motion to dismiss as to Title VII retaliation is granted.  This dismissal is granted with leave to amend, however Finch is advised to provide more details regarding what specific discrimination she complained about, and to elaborate on how there was a causal connection between the protected activity and the precise adverse employment action.[5]

---

[5] "Title VII retaliation claims require proof that the [employer's] desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Tex.*

**The Americans with Disabilities Act**[6,7]

The ADA prohibits employers from discriminating in employment against otherwise qualified individuals with a disability.  Finch does not allege that she has a disability, but that her daughter is disabled.  Under 42 U.S.C. § 12112(b)(4) of the ADA, an employer is prohibited from discriminating against a qualified individual "because of the known disability of an individual with whom [the employee] is known to have a relationship or association."  *See also* 29 C.F.R. § 1630.8 [An employer may not make a decision based on "belie[f] that the [employee] would have to miss work" in order to take care of a disabled person] ("associational disability discrimination").

---

*Sw. Med. Ctr. v. Nassar*, 570 U.S. ----, ----, 133 S.Ct. 2517, 2528 (2013).  The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse action.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  But mere temporal proximity, without more, must be "very close."  *Id.* (quotations omitted) (holding that a three to four month disparity between the statutorily protected expression and the adverse employment action was not enough).  "[I]n order to constitute protected opposition activity, a plaintiff must, *at the very least, communicate her belief that illegal discrimination is occurring*." *Marcelin v. Eckerd Corp. of Florida, Inc.*, 8:04-CV-491-T-17MAP, 2006 WL 923745, at *9 (M.D. Fla. Apr. 10, 2006) (citation omitted) (emphasis added).  "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Webb v. R&B Holding Co.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998).

[6]  Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*

[7]  The analysis of a disability discrimination claim under the FCRA is identical to that employed under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq*. *Gonzalez v. Wells Fargo Bank, N.A.*, 2013 WL 5435789, *7 (S.D. Fla. Sept. 27, 2013) (Marra, J.) citing *Albra v. Advan, Inc.*, 490 F.3d 826, 835 (11th Cir. 2007); *Byrd v. BT Foods, Inc.*, 948 So.2d 921, 925 (Fla. Dist. Ct. App. 2007).

In order to establish a *prima facie* case of "associational disability discrimination" under this provision, a plaintiff must show: (1) the plaintiff was subjected to an adverse employment action; (2) the plaintiff was qualified for the job at the time of the adverse employment action; (3) the defendant knew that a member of the plaintiff's family was disabled; and (4) the adverse employment action occurred under circumstances which raise a reasonable inference that the disability of the relative was a determining factor in the employer's decision. *Gonzalez v. Wells Fargo Bank, N.A.*, 2013 WL 5435789, *7 (S.D. Fla. Sept. 27, 2013) (Marra, J.) ("*Gonzalez*") citing *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1231 (11th Cir. 1999), following *Den Hartog v. Wasatch Academy*, 129 F.3d 1076 (10th Cir. 1997); *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011).

The fourth element requires the plaintiff to produce evidence that she was discriminated against because of the disability of a person with whom she has a relationship or other association, potentially encompasses three categories of claims: (1) "expense-avoidance," *e.g.* where an employee suffers an adverse action because a spouse or child is covered by the company's health plan and has a disability that is costly to the employer; (2) "disability by association," *e.g.* where the employer fears that the employee is likely to develop the disability due to exposure to or a genetic component of the ailment; and (3) "distraction," *e.g.*, where the employee is somewhat inattentive at work because his spouse or child has a disability that

requires his attention, yet is not so inattentive that he would need an accommodation to perform to his employer's satisfaction.  *Gonzalez*, 2013 WL 5435789 at *7 citing *Larimer v. International Business Machines Corp.*, 370 F.3d 698, 700 (7th Cir.), *cert. den.*, 543 U.S. 984 (2004).  This fourth element may also be satisfied if it is shown that the employer terminated an employee based on an unfounded assumption regarding the employee's need for future leave in order to care for a disabled person.  *Tyndall v. National Educ. Centers, Inc. of California,* 31 F.3d 209 (4th Cir. 1994); 29 C.F.R § 1630 (employer may not make decisions based on the "belie[f] that the [employee] would have to miss work" in order to take care of a disabled person).  On the other hand, an employer's decision to terminate an employee with a disabled relative is within legal bounds where it is based on an established record of past absences, *or a clear indication of the employee's intent to take additional time off to care for the disabled relative*.  *Tyndall* at 214 (emphasis added); *Hilburn* at 1232; *see also Magnus v. St. Mark United Methodist Church*, 688 F.3d 331 (7th Cir. 2012); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009).

Defendants assert that Finch fails to allege that during her employment, she complained of discrimination due to any disability, or that she engaged in any other activity protected under the statute.  The Defendants are correct.  Finch is clearly seeking "associational disability discrimination," but she has not asserted it.  The motion to dismiss as to the ADA is granted with leave to amend, with specific details as to each element of the cause of action she asserts.

**Age Discrimination in Employment Act**[8]

The ADEA prohibits employers from discriminating against any employee who is at least forty years of age because of that employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).  To state a claim under the ADEA, a plaintiff must allege the following elements: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and (4) she was replaced by or otherwise lost a position to a younger individual.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc); *Arafat v. Sch. Bd. of Broward County*, 549 F. App'x 872, 875 (11th Cir. 2013).

Defendants assert that Finch fails to allege that during her employment, she complained of discrimination due to her age or gender, or otherwise engaged in any other activity protected under the statutes.  As mentioned above, Finch responds by making the general argument that she has stated claims for retaliation under Title VII, the ADA, and the ADEA by alleging that Defendants retaliated against her for objecting to Defendants' unlawful employment practices under Title VII, the ADA, and the ADEA, and that she was constructively discharged after complaining about discrimination.  DE 21 at 4 citing Compl. ¶¶ 103, 145, 151, 157.  The Court finds that Finch has not articulated a claim for age discrimination.  The motion to dismiss is granted as to the 13th and 14th causes of action pursuant to the ADEA, with leave to

---

[8] Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*

amend, with specific details as to each element of the cause of action, including, specifically, the fourth element (that she was replaced by or otherwise lost a position to a younger individual).

**Florida's WhistleBlower Act**

As codified in section 448.102, Florida's Whistleblower Act ("FWA") is an exception to Florida's at-will employment doctrine, *Schultz v. Tampa Elec. Co.*, 704 So.2d 605, 605 (Fla. Dist. Ct. App. 1997), in that it "provides employees a cause of action against employers who wrongfully discharge them for ... objecting to or refusing to participate in the employer's illegal practices."  *Vanacore v. UNC Ardco Inc.*, 697 So.2d 892, 893 (Fla. Dist. Ct. App. 1997) (citations omitted); *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 912 (Fla. Dist. Ct. App. 2013)

In her Fifth Cause of Action, Finch alleges that Morgan Stanley retaliated against her in violation of the FWA, which provides, in pertinent part, that an employer may not take a retaliatory employment action because an employee has:

(2)     Provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer. Fla. Stat. §448.102(2).  The FWA states "[r]etaliatory personnel action means the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment."  Fla. Stat. § 448.101(5).

Page 19 of  25

To state a claim under this statute, Finch must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse employment action, and (3) the adverse employment action must have been causally linked to the plaintiff's protected expression.  *Castillo v. Roche Labs., Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012); *Williams v. Accelerated Learning Sols., Inc.*, 216CV239FTM38MRM, 2016 WL 3552430, at *3 (M.D. Fla. June 30, 2016) citing *Rutledge v. SunTrust Bank*, 262 F. App'x 956, 958-59 (11th Cir. 2008).  Courts analyze actions brought under the FWA using the same standard as a Title VII retaliation claim.  *See Butterworth v. Lab. Corp. of Am. Holdings,* 581 F. App'x 813, 818 (11th Cir. 2014); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

The Eleventh Circuit Court of Appeals has opined that:

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.  Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable under the anti-retaliation clause. In evaluating what actions meet that required level of substantiality, we recognize that Title VII is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.' Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard.

*Gupta*, 212 F.3d at 587 (citations and internal marks omitted); *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).  It has also been said that an employer's actions are considered "materially adverse" if they "might have dissuaded

a reasonable worker from making or supporting a charge of discrimination."

*Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006); *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008).

Defendants' first argue that Plaintiff's retaliation claim under Fla. Stat. § 448.02 fails as a matter of law because the Financial Industry Regulatory Authority rules do not qualify as laws, rules, or regulations covered by the statute.  FINRA is a private securities organization responsible for discipline of its members who violate its rules.  *See Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 571, 572 (2d Cir. 2011) ("FINRA is 'responsible for regulatory oversight of all securities firms that do business with the public,' and 'has the power to initiate a disciplinary proceeding against any FINRA member ... for violating any FINRA rule....'").  Defendants cite the only case that appears on the subject, *Odom v. Citigroup Glob. Markets Inc.*, 62 F. Supp. 3d 1330, 1337 (N.D. Fla. 2014), which states, in *dicta*, that "FINRA rules, which are privately enforced, do not appear to qualify as a 'law, rule, or regulation' under the FWA.  Fla. Stat. § 448.102(3)."  The Court is not convinced, at this stage, to dismiss this count as a matter of law based on one case that states in *dicta* that the FINRA rules "do not *appear* to qualify" as rules under the FWA (emphasis added).

Next, Defendants argue that Finch has not alleged a materially adverse employment action because she was not an employee at the time of the allegedly retaliatory action, and cannot therefore establish a causal link between the alleged protected activity and alleged adverse employment action.  Defendants base this

argument on paragraph 83 of the Complaint, where Finch alleges she was constructively discharged on October 31, 2014, and paragraph 94, where Finch alleges that on February 5, 2015, three days after she agreed to comply with a subpoena in the Lutz Arbitration, Defendants demanded repayment of the loan.  While Defendants are correct that Finch alleges in paragraph 94 that Morgan Stanley demanded repayment of the loan on a date after she was allegedly constructively discharged, it is also true that Finch alleges that Morgan Stanley informed her of the need to immediately repay the loan "on various occasions," the dates which are not stated with specificity, but which can be inferred to precede the date of her alleged constructive discharge.  *See, e.g.,* Compl. ¶¶ 64, 85-89, 94-95.

Without commenting further on the viability of Finch's retaliation claims, the Court notes that Defendants have not challenged how their alleged adverse employment action, the unexpected and persistent demand of repayment on a promissory note, meets the threshold level of substantiality to be cognizable under the applicable anti-retaliation clauses,[9] hence, Finch's retaliation claim under Fla.

---

[9]  *See, Padron v. BellSouth Telecommunications, Inc.*, 196 F. Supp. 2d 1250, 1259 (S.D. Fla. 2002), *aff'd sub nom. Padron v. Bellsouth*, 62 Fed. Appx. 317 (11th Cir. 2003).  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir. 1997)).  "Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality to be cognizable...." *Id.*  "It is clear, however, that not all conduct by an employer

Stat. § 448.02 remains viable following issuance of this instant order.

**Inconsistent Defenses**

Defendants, relying on Mississippi law, argue that Plaintiff's quasi-contract claims (promissory estoppel (Third Cause of Action) and unjust enrichment (Fourth Cause of Action)) are precluded by her allegation that the parties had an actual, express agreement on the same subject (First Cause of Action: Breach of Contract). Defendants argue that Finch's claims for promissory estoppel and unjust enrichment fail as a matter of law because Finch cannot bring these claims while also alleging the existence of an express contract governing the same subject matter.

Under federal law, a party may assert "inconsistent" claims or defenses. Pleading in the alternative extends to pleading "inconsistent" claims or defenses. Fed. R. Civ. P. 8(d)(3); *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) ("The Federal Rules allow a plaintiff to 'state [in one complaint] as many separate claims ... as it has.'" citing Rule 8(d)(3)). That is, if more than one claim or defense is possible, a party may assert all of them, even if some of them might be inconsistent with each other. For example, a plaintiff may simultaneously assert a legal claim for breach of contract and an equitable claim for quantum meruit or

---

negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." *Gupta*, 212 F.3d at 587 (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448-49 (11th Cir. 1998)).

unjust enrichment, even though the equitable claims ordinarily assume the lack of a binding contract.  Federal Rules of Civil Procedure, Rules and Commentary Rule 8, General Rules of Pleading.  While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, under the federal rules of civil procedure, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts.  *Id.; Singleton v. Chevron, USA, Inc.,* 2011 WL 2981396 (E.D. La. 2011); Consistency in Pleadings Not Demanded, 5 Fed. Prac. & Proc. Civ. § 1283 (3d ed.); *Aceto Corp. v. TherapeuticsMD, Inc.,* 953 F. Supp. 2d 1269, 1287-1289 (S.D. Fla. 2013) (Marra, J.); *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,* 2008 WL 906101, *5 (S.D. Fla. 2008) (Marra, J.)

At this stage of the proceedings, Plaintiff may plead in the alternative.  At the summary judgment stage or at trial, the Court will apply the applicable substantive law to determine which, if any, of these claims may proceed.  To the extent Defendants challenge the unjust enrichment and promissory estoppel counts because Finch alleges the existence of an express contract for which she also seeks to hold Defendants liable, it is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment and promissory estoppel counts fail.  Thus, while Finch may not recover under both legal and equitable theories, there is no basis for dispensing with Finch's unjust enrichment and promissory estoppel claims at the motion to dismiss stage.  Accordingly, Defendants' Motion to Dismiss Finch's claims for promissory estoppel and

unjust enrichment because she also asserts a breach of contract claim is denied.

**Conclusion**

In accordance with the conclusions and findings herein, it is hereby

ORDERED AND ADJUDGED that Defendants' Partial Motion to Dismiss [DE 16] is granted in part and denied in part.  Finch may filed a Second Amended Complaint on or before August 25, 2016.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 10th day of August, 2016.

KENNETH A. MARRA
United States District Judge